[No. 28519-0-I.   Division One.   April 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY
SHANNAHAN, *Appellant.*

*Richard A. Hansen* and *Allen & Hansen P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Anne M. Bremner, Special Deputy,* for respondent.

FORREST, J. — Terry Shannahan appeals the trial court's order finding him guilty of operating a motor vehicle in a negligent manner in violation of RCW 46.61.525 and ordering him to pay restitution in lieu of a fine, claiming restitution was not an available penalty for violation of RCW 46.61-.525, the restitution order violated his right to due process of law, and the order violated public policy. We affirm.

Shannahan was charged by information filed on October 16, 1990, with vehicular assault pursuant to RCW 46.61-.522. The charge stemmed from an automobile accident on October 14, 1990, in which Shannahan's vehicle collided with a vehicle driven by Rebecca Kunz. Kunz suffered extensive head and brain injuries and is currently disabled. The investigating officer noticed that Shannahan had bloodshot eyes, was slurring his speech, and had an odor of alcohol on his breath. The officer placed Shannahan under arrest for

vehicular assault and drew blood from him. Shannahan's blood alcohol level was .09.

A jury found Shannahan guilty of the lesser included offense of negligent driving in violation of RCW 46.61.525. At the request of the State, the court ordered Shannahan to pay restitution in the amount of $11,137.86, in monthly payments of $100. Shannahan's insurance carrier paid $25,000, the limits of the policy, to Kunz.

I

Shannahan contends that the negligent driving statute, RCW 46.61.525, under which he was convicted does not authorize restitution in lieu of the penalty, a fine of $250, set forth therein.[1] We disagree. Reading RCW 9A.20.030 in conjunction with RCW 9A.20.021 and RCW 9A.04.090 authorizes restitution upon conviction of negligent driving.

Restitution was ordered pursuant to RCW 9A.20.030 which provides in part:

> If a person has gained money or property or caused a victim to lose money or property through the commission of a crime, upon conviction thereof . . . the court, in lieu of imposing the fine authorized for the offense under RCW 9A.20.020, may order the defendant to pay an amount, fixed by the court, not to exceed double the amount of the defendant's gain or victim's loss from the commission of a crime.

RCW 9A.20.030(1).[2]

---

[1] RCW 46.61.525 provides in part:

"It shall be unlawful for any person to operate a motor vehicle in a negligent manner. . . .

". . . Any person violating the provisions of this section will be guilty of a misdemeanor: PROVIDED, That the director [of Licensing] may not revoke any license under this section, and such offense is not punishable by imprisonment or by a fine exceeding two hundred fifty dollars."

[2] We note that this statute permits an order of restitution in lieu of the fine authorized *under RCW 9A.20.020.* RCW 9A.20.020 deals with crimes committed before July 1, 1984. RCW 9A.20.021 sets forth the maximum sentences for crimes committed July 1, 1984, and after. We hold that the authorization of restitution in lieu of a fine in RCW 9A.20.030 applies with equal force to fines imposed pursuant to RCW 9A.20.020 and to those imposed pursuant to RCW 9A.20.021.

Under RCW 9A.20.021(3):

> Every person convicted of a misdemeanor *defined in Title 9A RCW* shall be punished by imprisonment in the county jail for a maximum term fixed by the court of not more than ninety days, or by a fine in an amount fixed by the court of not more than one thousand dollars, or by both such imprisonment and fine.

(Italics ours.) Arguably, because the misdemeanor of which Shannahan was convicted is not defined in RCW Title 9A, the restitution order was not authorized by RCW 9A.20.030 standing alone. However, RCW 9A.04.090 provides: "The provisions of chapters 9A.04 through 9A.28 RCW of this title are applicable to offenses defined by this title or another statute, unless this title or such other statute specifically provides otherwise." Nothing in RCW 46.61.525, under which Shannahan was convicted, specifically provides that RCW 9A.20.030 is not applicable to the offense of operating a motor vehicle in a negligent manner. Therefore, by virtue of RCW 9A.04.090, restitution is an alternative when sentencing for violation of RCW 46.61.525.

Our analysis is supported by *State v. Stephan*.[3] In *Stephan*, the court held the fact that a crime defined outside RCW Title 9A does not contain a restitution provision does not mean that restitution is not authorized. Like Shannahan, the defendant in *Stephan* argued restitution was not authorized for a violation of the securities act because RCW 21.20.400 only lists imprisonment and/or a fine as penalties for securities fraud and because the securities act is not mentioned in RCW Title 9A. The court rejected this argument and held that, by virtue of RCW 9A.20.040,[4] felonies defined outside RCW Title 9A are subject to the restitution

---

[3]35 Wn. App. 889, 671 P.2d 780 (1983).

[4]RCW 9A.20.040 classifies felonies for purposes of prosecutions under RCW Title 9A "where the grade or degree of a crime is determined by reference to the degree of a felony for which the defendant or another previously had been sought, arrested, charged, convicted, or sentenced, if such felony is defined by a statute . . . which is not in Title 9A RCW[.]"

provisions of RCW 9A.20.030.[5] By similar reasoning, we hold that, by virtue of RCW 9A.04.090,[6] misdemeanors outside RCW Title 9A are subject to the restitution provisions of RCW 9A.20.030. Accordingly, the fact that RCW 46.61.525 contains no restitution provisions does not preclude restitution for violations thereof.

Shannahan urges several arguments why, as a matter of statutory construction, the above result is wrong. First he contends that because RCW 46.61.525 does not explicitly provide for restitution, restitution cannot properly be based on other statutes. This is plainly incorrect. Restitution is not explicitly provided for in the statute which sets forth the penalties for the various classes of misdemeanors and felonies, RCW 9A.20.020, but restitution clearly is an appropriate alternative pursuant to RCW 9A.20.030. Furthermore, the Legislature could not merely refer to RCW 9A.20 in RCW 46.61.525 because the Legislature clearly desired to establish a special penalty for negligent driving different from the standard misdemeanor penalty. Nor is Shannahan's reliance on the doctrine expressio unius est exclusio alterius persuasive. Indeed, the maxim cuts the other way. Since the Legislature specifically reduced the standard misdemeanor penalty in the case of negligent driving without reference to restitution, the compelling inference is that the Legislature did not intend to remove the restitution authority generally applicable to misdemeanors.

■ ■ Shannahan further urges that we read the negligent driving statute[7] in pari materia with the vehicular assault statute[8] and the vehicular homicide statute.[9] He

---

[5]Contrary to the State's argument, *Stephan* does not control this case because the court in *Stephan* relied on RCW 9A.20.040, which applies only to felonies.

[6]"The provisions of chapters 9A.04 through 9A.28 RCW of this title are applicable to offenses defined by this title or another statute, unless this title or such other statute specifically provides otherwise."

[7]RCW 46.61.525.

[8]RCW 46.61.522.

[9]RCW 46.61.520.

argues that because the latter two statutes refer to RCW 9A.20, whereas the negligent driving statute does not, we should find a legislative intent to exclude any such reference from the negligent driving statute and therefore infer an intent to prohibit the ordering of restitution upon conviction of negligent driving. We disagree. The vehicular assault statute and the current penalty provision of the vehicular homicide statute were added to the motor vehicle code in 1983, many years after the negligent driving statute had been made part of the code. Accordingly, these later provisions shed no light on the interpretation of the preexisting negligent driving statute. If, prior to the passage of the vehicular homicide and assault statutes, the court had authority to impose restitution for negligent driving, then enactment of these statutes did not take away this authority. We agree with Shannahan that restitution is fundamentally penal in nature. However, we do not find the statutory framework ambiguous and, hence, there is no reason to apply the rule of lenity in choosing between equally plausible alternatives. Indeed, by enacting the restitution statute, the Legislature intended to grant courts broad powers to effect appropriate restitution.[10]

Finally, Shannahan urges that authorizing restitution in cases such as this is contrary to public policy. We completely disagree and find that public policy strongly supports our interpretation of the statute. Restitution is an integral part of the Washington system of criminal justice both for felonies[11] and misdemeanors.[12] Indeed, the last time the Legislature addressed restitution it provided:

> Restitution *shall* be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record.

---

[10]*State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991).

[11]RCW 9.94A.142.

[12]RCW 9A.20.030.

(Italics ours.) RCW 9.94A.142(2). While not directly applicable to misdemeanors because it is contained in the Sentencing Reform Act of 1981, this statute, which makes restitution mandatory for felonies, indicates a strong public policy to provide restitution whenever possible. This policy is part of increased legislative concern for the victims of crimes.[13] In the absence of a clearly expressed legislative intent to prohibit restitution for negligent driving convictions, we decline to carve out an exception to the otherwise general application of restitution to criminal offenses.

## II

Shannahan offers several reasons why the restitution order in this case is inappropriate even if courts in general have authority to order restitution for a negligent driving conviction. We find none persuasive. First, he contends that his due process rights have been violated, although he never clearly articulates what particular aspect of the proceeding constituted a constitutional violation. He had notice, he had a hearing, he was represented by counsel, and he had a full opportunity to present all his objections before restitution was ordered. Second, Shannahan asserts that the restitution order cannot stand because the amount of restitution ordered was speculative and unsubstantiated. We disagree. On the contrary, the amount of restitution ordered was clearly not speculative. At the restitution hearing, the court stated: "I am going to order that [Shannahan] pay $9,110, such amount representing unpaid medical, and $2,027.86 for out-of-pocket medicals." The trial court thus based the amount of restitution upon a definite and articulable basis.

Shannahan next argues that the $25,000 paid by his insurance carrier should be credited against his restitution

---

[13]See, for example, RCW 9.94A.110 (requiring a sentencing court to consider any victim impact statement and to allow arguments at the sentencing hearing from the victim or the survivor or representative of the victim); RCW 9.94A.120-(7)(a)(ii)(B)(V) (authorizing a sentencing court to order, as a condition of a suspended sentence, certain sex offenders to make recoupment to the victim for the cost of any counseling required as a result of the sex offense).

obligation. Because he was ordered to pay only $11,137.86 in restitution, he argues that his obligation should be discharged in light of the $25,000 insurance payment. We disagree. The decision whether or not to credit payments to the victim by Shannahan's insurance carrier against the restitution order was a matter within the trial court's discretion.[14] In *State v. Young*,[15] the court ordered the defendant, found guilty of vehicular homicide, to pay as restitution the child support obligation of the defendant's passenger who had been killed in the accident. On appeal, the court affirmed the trial court's refusal to credit payments by the defendant's liability carrier against the restitution obligation. The court stated that, like the decision whether to order restitution, a decision as to how to allocate insurance payments against the victim's loss is a matter within the trial court's discretion.[16] The court then stated that a trial court does not abuse its discretion by choosing to apply insurance payments first against items of loss that are not recoverable by restitution, "thereby maximizing that portion of the loss that the victim or next of kin will recover." *State v. Young*, 63 Wn. App. 324, 336, 818 P.2d 1375 (1991). Likewise, the trial court did not abuse its discretion by refusing to credit the insurance payments against Shannahan's restitution obligation.

Shannahan next argues that "[c]ase law makes it clear that restitution can only be ordered in the amount of an actual loss suffered by a victim of crime." He cites *State v. Theroff*,[17] in support of this contention. Even by the most strained reading of the opinion, *Theroff* cannot be read to stand for this proposition. The court in *Theroff* rejected an argument that the trial court's order directing the defendant

[14]*State v. Young*, 63 Wn. App. 324, 333-34, 818 P.2d 1375 (1991). The court's ruling will not be disturbed absent an abuse of that discretion.

[15]63 Wn. App. 324, 818 P.2d 1375 (1991).

[16]*Young*, 63 Wn. App. at 335.

[17]33 Wn. App. 741, 657 P.2d 800, *review denied*, 99 Wn.2d 1015 (1983).

to pay $10,000 to a third party charity was sustainable as an order of restitution. The court stated, "[n]or can the payment be considered restitution because restitution, as a condition of probation, must be related to the crime and can only involve victims who are named in the information." *State v. Theroff*, 33 Wn. App. 741, 745, 657 P.2d 800, *review denied*, 99 Wn.2d 1015 (1983). This was the extent of the court's discussion of restitution. Nowhere in the opinion does the court discuss limitations on the amount of restitution that a court may order.

Moreover, Shannahan's argument ignores the specific language of the restitution statute, which permits a court to "order the defendant to pay an amount, fixed by the court, not to exceed double the amount of the defendant's gain or victim's loss". RCW 9A.20.030.

■■ For the same reasons, Shannahan's argument that restitution cannot be ordered because many, if not all, of the victim's medical expenses would be covered by other available insurance is without merit. Even if the victim's loss was fully compensated by insurance from whatever source, the plain language of RCW 9A.20.030 would permit restitution in addition thereto.[18] The trial court did not abuse its discretion in either ordering restitution or fixing the amount of restitution and its decision will therefore not be disturbed.[19]

■ Finally, Shannahan contends that because an order of indigency was entered for purpose of appeal, the trial court had no factual basis upon which to find he had the ability to make restitution payments. The contention is frivolous. The trial court made a specific finding in the restitution order that

---

[18]We note that in making this argument, Shannahan abandons his position, argued in connection with his invocation of the rule of lenity, that restitution is essentially penal, and instead takes the position that it is purely compensatory.

Because the restitution order here did not encompass future expenses or wage loss, we decline to address Shannahan's argument that the restitution order violated public policy since restitution orders cannot be used to compensate victims for future expenses or wage loss.

[19]*Young*, 63 Wn. App. at 334-35.

Shannahan had the ability and means to pay the amount ordered and the findings are fully supported by the record.[20]
Affirmed.

PEKELIS, A.C.J., and GROSSE, J., concur.

---

[20]"THE DEFENDANT: Through the end of August I grossed $20,000.
"MR. HANSEN: To date this year?
"THE DEFENDANT: Last year I grossed 44,000, this year I am not even going to make that.
"THE COURT: What amount do you think you are going to be able to afford in the way of monthly payments to deal with the obligations that I have just set forth?
"THE DEFENDANT: Anywhere between 50 and a hundred bucks a month. Is that satisfactory?
"THE COURT: In terms of a realistic amount, $100 a month sounds like it might be the way to go on this matter."